### In re AMF BOWLING SECURITIES LITIGATION.

### No. 99 Civ. 3023(PKC).

United States District Court,
S.D. New York.

Sept. 13, 2004.

---

Gandolfo V. DiBlasi, Robinson B. Lacy, Sullivan & Cromwell, New York City, for The Goldman Sachs Group, LP, Goldman, Sachs & Co., Morgan Stanley & Co., Cowen & Company.

Gandolfo V. DiBlasi, Robinson Burrell Lacy, Sullivan & Cromwell, LLP, New York City, for Schroder & Co., Inc.

Paul Vizcarrondo, Jr., Wachtell, Lipton, Rosen & Katz, New York City, for AMF Bowling, Inc., Richard A. Friedman.

Mark L. Weyman, Anderson, Kill, Olick & Oshinsky, PC, New York City, Michael J. Chepiga, Michael J. Chepiga, William Michael Regan, Simpson, Thacher & Bartlett, New York City, for Douglas J. Standard.

Bernard M. Gross, Deborah Gross, Law Office of Bernard M. Gross, PC, Philadelphia, PA, Todd S. Collins, Berger & Montague, PC, Philadelphia, PA, for Jacob Salzman, Hal Pugach.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

Presently before the Court are the motions of lead plaintiffs' counsel for final approval of two settlements and a plan of allocation and a motion on behalf of all plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses. In conducting the review mandated by Rule 23(e), Fed.R.Civ.P., I have a duty "to make a considered and detailed assessment of the reasonableness of proposed settlements...." *Weinberger v. Kendrick,* 698 F.2d 61, 82 (2d Cir.1982) (Friendly, J.), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). "The district court must consider many factors, including the complexity of the litigation, comparison of the proposed settlement with the likely result of litigation, experience of class counsel, scope of discovery preceding settlement, and the ability of the defendant to satisfy a greater judgment." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285 (2d Cir.1992) (citing *Weinberger,* 698 F.2d at 73–74 and *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974)).

*Background Relevant to the Settlements and Plan of Allocation*

This action was commenced on April 27, 1999 and arises out of an initial public offering ("IPO") of shares of AMF Bowling, Inc. ("AMF") in November 1997. On March 22, 2001, Judge Denny Chin denied a motion to dismiss the Second Amended Complaint, concluding that it stated claims under sections 11, 12 and 15 of the Securities Act of 1933 (the "1933 Act"). During the pendency of the action, AMF filed for bankruptcy.

By order of March 26, 2002, modified by order of May 21, 2002, Judge Chin certified a class pursuant to Rule 23(b)(3), Fed. R.Civ.P. The class consists of all persons, excluding the defendants, who purchased the common stock of AMF before February 26, 1999 pursuant to the Registration Statement for AMF's November 7, 1997 IPO or in the secondary market and traceable to the IPO.

Judge Chin approved the class notice by order of February 4, 2003. A total of 11,-830 notices were either mailed directly to potential class members or were provided to nominees for distribution to their customers. A summary notice was published in the Wall Street Journal on February 28, 2003.

A Third Amended Complaint, the operative pleading, was filed on May 8, 2003. In the course of discovery, twenty fact depositions were conducted. Between the two sides, a total of ten experts were designated.

The case was reassigned to me on November 20, 2003. On November 21, I was advised that the individual defendants— Richard A. Friedman and Douglas J. Stanard—had reached an agreement-in-principle with counsel for the class. The agreement, I was advised, was achieved through the active assistance of the Honorable Nicholas Politan, a retired federal district judge who served as a privately-retained mediator. I express the Court's appreciation of Judge Politan's efforts to resolve this case.

At the November 21 conference, I set a schedule on the remaining defendants' proposed summary judgment motions and set a trial date, contingent upon the out-come of the motions, of July 6, 2004. The Goldman Sachs Group L.P., Goldman Sachs & Co., Morgan Stanley & Co., Cowen & Co., Schroder & Co., Inc., (the "Investment Banking Defendants") filed their motions for summary judgment and, per the November 21 schedule, oral argument was held on April 9, 2004.

In response to an inquiry from the Court following oral argument, the parties indicated a willingness to further discuss settlement before a Senior Judge of this Court. Judge Robert W. Sweet of this Court generously agreed to meet with the parties and, as a result of those discussions, a settlement-in-principle was reached between class counsel and the Investment Banking Defendants. I thank Judge Sweet for his willingness to serve and for the effective way in which he brought about the settlement. The participation of Judge Sweet and retired Judge Politan in the settlement process gives me confidence that they were conducted in an arms-length, non-collusive manner.

I preliminarily approved the Friedman and Stanard settlement on March 23 and set a final approval hearing for June 28 at 10 a.m. By order of June 17, 2004, I preliminarily approved the settlement with the Investment Banking Defendants and set the fairness hearing for September 9 at 10 a.m. I also rescheduled the Friedman and Stanard hearing for the same time and place.

Notice of the fairness hearing on the Friedman and Stanard settlement was

provided to the class as well as a separate notice of the settlement with the Investment Banking Defendants. Class members who had not exercised their right to opt out of the class when it was originally certified were afforded the opportunity of a back-end exclusion, *i.e.* the opportunity to exclude oneself from the class once the terms of a settlement are known. Rule 23(e)(3). I have examined the affidavit of Edward Sincavage and find that notice to the class has been provided in a reasonable and effective manner.

■ In total, there have been eleven requests for exclusion from the class. Eight of them appear to have been in response to the original class notice in February 2003. Two of them were in response to the Friedman and Stanard notice and one of them in response to the June notice of the settlement with the Investment Banking Defendants. The fact that so few class members have elected to opt out after knowing the terms of the settlements speaks well of their fairness.

Nor have class members who have elected to remain in the class objected to the settlements. Two statements of position have been received with respect to the fee application, which I will address. No class member appeared at the September 9 hearing.

I have examined the Friedman and Stanard settlement and the Investment Bank settlement separately and together in order to determine whether they are fair, reasonable and adequate to the members of the class. I know from my own experi-. ence with the case that the class plaintiffs faced serious difficulties in endeavoring to establish liability. For example,

- One of the central allegations of the lawsuit was that AMF had overstated the backlog of New Center Packages ("NCPs"), thereby creating the impression of stronger sales than was warranted by the facts. The Company had disclosed in the IPO Prospectus that the NCP number was 2,085 as of October 27, 1997. Subsequently, on February 19, 1998, the Company issued an earnings release disclosing that the then current NCP backlog number was 1,548. The reduction in such a short time span, the plaintiffs asserted, was suggestive of a misstatement of the October figure. But, despite the February 19 earnings release, the stock continued to trade above the IPO price until July 30, 1998. In the context of this litigation, these circumstances raised serious issues in terms of the materiality of the statements to investors and loss causation.

- Further, the defendants had advanced an argument that the February 19, 1998 earnings release put a reasonable investor on inquiry notice of an actionable misstatement and that the claims asserted by the class were time-barred.

- The class plaintiffs contended that the prospectus had misstated the state of the Asian markets and its likely effect on AMF"s business. The defendants were prepared to mount a serious defense that the importance of the Asian markets had been properly disclosed to AMF investors and whatever was known of the Asian currency situation was known or knowable by the public, even if it was not disclosed in the prospectus.

I simply cite these examples to make the point that this would not have been an easy case for the plaintiffs. First, assuming some portion of their claims survived summary judgment, they would need to prevail at trial. If they had done so, they would have to survive post-verdict motions and an appeal. Although plaintiffs were

prepared to argue that damages ranged from $97–208 million, proof of loss causation and damages posed special problems for the plaintiffs.

I realize that the Investment Banking Defendants could have withstood a judgment greater than the amount of the settlement but this is of little significance in light of all other factors.

Considering the record as a whole, I find that the settlement with Friedman and Stanard of $8 million and the settlement with the Investment Banking Defendants of $12 million, a total of $20 million, to be fair, reasonable and adequate to members of the class. I find that the plan of allocation is simple and straightforward and treats all members of the class in an identical matter and is based upon input from plaintiffs' expert; it, too, is approved.

*Attorneys' Fees*

The Friedman and Stanard notice informed class members that counsel may seek up to 33 1/3 % of the recovery as an attorneys' fee. The second settlement notice revised this percentage and indicated that counsel would seek 30% of the total aggregate settlement. The Los Angeles County Employees Retirement Association ("LACERA") urged the court to consider a "significantly lower fee award than 33 1/3%." It refers to the "growing trend of sub–25% fee requests". The New York State Teachers' Retirement System has joined in the statement of LACERA.

■ The Second Circuit has provided substantial guidance to the district courts on common fund fee applications in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir.2000). Judge McLaughlin's opinion traces the evolution of judicial review of fee awards in class actions, from a percentage approach to a lodestar approach to a trend back in the direction of the percentage approach. *Goldberger* made

plain that the district court has discretion to use either the lodestar or percentage in setting a fee award.

"In sum, we hold that both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases. Of course, no matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee".

*Id.* at 50.

*Goldberger* notes that "the lodestar remains useful as a baseline even if the percentage method is eventually chosen." It serves as "a 'cross-check' on the reasonableness of the requested percentage." *Id.* "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.... Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)." *Id.*

(1) *The time and labor expended by counsel.*

■ The first of the *Grinnell* factors— "the traditional criteria in determining a reasonable common fund fee", *id.*, requires consideration of the time and labor expended by counsel. I have examined the submissions of the two principal class counsel in this case, Berger & Montague, P.C. and Law Offices of Bernard Gross, P.C., and together the two firms have put in a total of 7,848.35 hours and a lodestar amount of $3,249,084; the highest billing rate for either of the two firms was $545 for Sherrie Savett and $545 for Bernard Gross. Most of the partner hours for the two firms were billed at $515 per hour or below, which I find to be reasonable. The fees of the following other counsel appear

reasonable and appropriate: Michael Etkin, bankruptcy counsel, with 256.70 hours at a top-billing rate of $525 per hour and a resulting lodestar of $109,876.50; Savett Frutkin Podell & Ryan with 41.8 hours at $495 per hour or less for a lodestar of $13,346; Klafter & Olsen with 28.75 hours at $495 per hour for a lodestar of $14,231.25; and the Law Office of Thomas Gettler with 268.90 hours at rates not exceeding $350 per hour for a lodestar of $94,115. The Law Offices of Donald B. Lewis reports 394.90 hours at a rate of $475 and a lodestar of $187,577 but the application fails, except in a perfunctory narrative devoid of dates or specifics, to describe the worked performed. With the possible exception of work on two subpoenae, Mr. Lewis' work appears to consist of conferrals with co-counsel and reviewing and offering editorial comments on the work of others. I do not consider a review by one set of class counsel of the work product of another set of class counsel to be recompensable, absent a particularized showing of the value that it added. A lodestar figure of $25,000 for this firm would appear to be generous. Deducting the amounts billed by this firm in excess of $25,000 would leave a modified total lodestar of $3,505,653.50. Because I will be awarding fees on a percentage basis, my lodestar calculation is solely for cross-check purposes.

### (2) *The magnitude and complexities of the litigation.*

The next *Grinnell* factor focuses on the size and complexity of the case. All securities cases tend to be document intensive. This case was no different. It did center on one prospectus and two groups of defendants: (1) an officer of the issuer and (2) the investment bankers and one officer of one of the investment banks. I can identify no issue in the case of exceptional difficulty.

### (3) *The risk of the litigation.*

There was a risk that summary judgment would have been granted in part. But, given the difficulty that a defendant faces in obtaining summary judgment, it is likely that some portion of a claim would have survived. As a section 11 case, plaintiff would not have needed to prove *scienter* on the part of the defendants. The Investment Banking Defendants would have put on a due diligence defense. As *Goldberger* points out, nearly all securities class actions settle. The risk of failure in this case was moderately low.

### (4) *The quality of representation.*

There were quality and experienced counsel on both sides of this case. The arguments presented by both sides on the summary judgment motion were well prepared, well researched and cogently presented. From what I observed, the lawyers from Berger & Montague, P.C. and the Law Offices of Bernard Gross, P.C., particularly Mr. Collins and Ms. Gross, performed at a highly professional and competent level.

### (5) *The requested fee in relation to the settlement.*

Plaintiffs' counsel seeks a fee on a percentage basis of 30% of the class recovery before deducting expenses, or a total of $6,000,000. Counsel points out that this is less than twice the lodestar. Claimed expenses are $905, 883.63 and thus the net recovery to the class would be $13,094,116.37.

### (6) *Public policy considerations.*

Among the relevant public policy considerations is the need to encourage plaintiffs to undertake worthy cases that vindicate the rights of injured shareholders. I note

in this regard that the litigation has had a life of well over five years and class counsel is entitled to be well compensated for its diligent efforts.

While at least one other Circuit has viewed 25% of the recovery as a "benchmark", the *Goldberger* court noted that "we adhere to our prior practice that a fee award should be assessed based on scrutiny of the unique circumstances of each case", and "a jealous regard to the rights of those who are interested in the fund." *Id.* at 53 (citation omitted). *Goldberger* affirmed a fee award that amounted to 4% of the total recovery. Percentages of 11 to 19% have been awarded in cases with recoveries in the $50–75 million range. *See Goldberger* at 52. Judges of this court have approved fees of 20% of the recovery net of expenses, *In re Independent Energy Holdings,* 2003 WL 22244676 (S.D.N.Y. Sept 29, 2003), and 20% of the cash and stock, *Varljen v. H.J. Meyers & Co., Inc.,* 2000 WL 1683656 (S.D.N.Y.2000). One court has approved a fee award of 8% of the total settlement amount. *Klein v. Salvi,* 2004 WL 596109 (S.D.N.Y. March 30, 2004). I recognize that there are judges of this court who have awarded higher percentages in other circumstances.

Here, taking account of the totality of circumstances outlined above, I have decided on a percentage of 25% of the gross settlement proceeds, which equals $5,000,000, plus expenses. This is 1.43 times the modified lodestar (or 1.36 times the unmodified lodestar). When the claimed expenses are included, attorneys' fees and expenses equal 29.5% of the total recovery. The amount awarded in relation to the overall settlement meets the standard in the Private Securities Litigation Reform Act of 1995 ("PSLRA") that the "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages actually paid to the class." 15 U.S.C. § 78u–4.

*Expert Witnesses and Law Firm Expenses*

■ Total counsel expenses of $905,886.63 are sought in this case. Of this amount, $578,191.98 is for the fees paid to expert witnesses. The submissions presented to me aggregate all expert witness fees incurred by a law firm into a single line: $428,810.98 (Berger & Montague, P.C.) and $149,381 (Law Office of Bernard Gross, P.C.). This is wholly inadequate. I am directing that plaintiffs file with the court an affidavit with respect to the services of each expert as follows:

1. setting forth (a) a description of the services of the expert; and (b) the hours spent;

2. annexing any agreements with the expert and any billing statements rendered by the expert and stating whether the billing statements have been paid;

3. stating that the obligation of the law firm and/or its clients to compensate the expert in this case was not contingent upon the existence of a monetary recovery; and

4. setting forth in detail any instance in which the expert provided services to the law firm, its lawyers or clients without charging for the services, or, if the expert charged, any portion of the compensation that was not paid. (This will ensure that no payment in this case is a disguised payment for past services.)

■ I also find that the law firms' descriptions of their own expenses are inadequate. With respect to the expenses billed by each law firm, I will require the law firm to submit an affidavit making the disclosures that would be required to be

made to a client under ABA Formal Opinion 93–379 (1993) regarding charges other than professional fees. Specifically, the affidavit should recite whether any "general overhead" items, as defined in the Opinion, are included in the expenses, whether "disbursements" include any surcharge charged by the lawyer over the amount billed to the lawyer by the service provider and a statement that, in the case of "in-house services" provided by the law firm, no more than the direct cost associated with the service plus a reasonable allocation of overhead has been charged.

*Expenses of Class Representatives*

■ In connection with their services as lead plaintiffs, Jacob Salzman seeks $3,000 and Hal Pugach seeks $2,400. At the outset of this litigation, a lead plaintiff is required to certify, pursuant to the PSLRA, that he "will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4)." 15 U.S.C. § 78u–4(a)(2)(A)(vi). The referenced section of the PSLRA provides that the share of any final judgment "award to a class representative ... shall be equal, on a per share basis, to" the amount awarded to all other members of the class but goes on to state that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly related to the representation of the class to any representative party." 15 U.S.C. § 78u–4(a)(4). In the case of Mr. Pugach, there is only an affidavit of counsel stating that Mr. Pugach spent time in testifying as a witness and, in total, "spent at least 24 hours actively participating in this litigation." Counsel then asserts that Mr. Pugach's reasonable rate is $100 per hour. Mr. Salzman recites that the time he has spent sitting for his deposition and reading documents relating to the case and discussing them with counsel totals 30 hours for which he seeks compensation at $100 per hour.

Nothing presented to me places the time devoted to this case by the two class representatives into the category of a recoverable expense. Neither claims any out-of-pocket expense. There is no assertion that either lost time at work or gave up employer-granted vacation time. Neither cites to lost sales commissions nor missed business opportunities. While I am mindful of district courts in other districts permitting awards without such a showing, no circuit court precedent has been cited to me. The single case in this district that has been cited, *Varljen v. H.J. Meyers & Co.*, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) stands for the straightforward proposition that "lost wages" may be recovered. Congress could have decided to allow class representatives to make fee applications based upon their time charges. But I find nothing in the statute to suggest that Congress intended to do so when it allowed class representatives to recover for their "reasonable costs and expenses (including lost wages)". Indeed, I submit that the better reading is that Congress did not want lead plaintiffs to gain a benefit in any respect, except as a member of the class they represented.

*Conclusion*

The settlements, totaling $20 million, and the plan of allocation are approved as fair, reasonable and adequate to the class. In the context of a litigation hard fought over five years, attorneys' fees are awarded in the amount of $5,000,000, representing 25% of the recovery and 1.43 times the modified lodestar. With respect to plaintiffs' counsel's expenses, counsel is directed to supplement the record with the affidavits described herein by September 15,

2004. If all of the requested expenses of counsel are ultimately allowed, fees and expenses will equal 29.5% of the class recovery. The application for "expenses" of lead plaintiffs Pugach and Salzman are denied.

SO ORDERED.